UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARK RIDLEY, *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-17-974 |
| | § | |
| REGENCY VILLAGE, INC., *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

### MEMORANDUM OPINION AND ORDER

Pending before the court is a motion to dismiss (Dkt. 43) filed by defendant Penbar, Inc. d/b/a Regency Village Skilled Nursing and Rehab Center ("Regency") and a motion for conditional certification (Dkt. 24) filed by plaintiffs Mark Ridley, Stephanie Ketchum, Olga Guevara, and Maria Fernandez ("Plaintiffs"). Having considered the complaint, motions, responses, replies, and applicable law, the court is of the opinion that Regency's motion to dismiss should be GRANTED IN PART and DENIED IN PART and Plaintiffs' motion for conditional certification should be GRANTED.

### I. BACKGROUND

Plaintiffs sued Regency on March 29, 2017, alleging violations of (1) the Fair Labor Standards Act ("FLSA") for unpaid overtime wages and (2) state law for unpaid "straight-time" compensation.[1] Dkt. 1 at 1; Dkt. 42 at 1. Plaintiffs sued as a collective action under the FLSA and a Rule 23 class action for the state law claims. Dkt. 42 at 1.

---

[1] For the purposes of the motion to dismiss, the court accepts all well-pled facts contained in Plaintiffs' complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

According to Plaintiffs, Regency employed Plaintiffs and others similarly situated as licensed vocational nurses, registered nurses, certified medical assistants, and certified nurse assistants (collectively, "nurses"). *Id.* Regency scheduled its nurses to work numerous twelve-hour shifts per week, and many nurses regularly worked more than forty hours per week. *Id.* at 10. Regency's timekeeping software automatically deducted thirty minutes or one hour (during each twelve-hour shift) for a lunch break. *Id.* at 11. The lunch break was deducted regardless of whether the nurses actually took the break or worked through their break. *Id.* Further, Plaintiffs allege that Regency knew and expected its nurses to work through their lunch breaks, despite its policy of automatically deducting time. *Id.* at 11–12.

Plaintiffs filed this FLSA collective action claiming that Regency should have paid overtime wages to nurses for the meal break time automatically deducted when the nurses worked more than forty hours per week. *Id.* at 14. The alleged class consists of:

> Nurses employed at all Regency Village locations to provide direct patient care at any time during the three years before this Complaint was filed up to the present who, as a result of Defendants' practice of automatically deducting 30 minutes or 1 hour from each shift worked and not paying for same, did not receive all of the overtime pay to which they were entitled under the FLSA in the weeks of their employment in which said nurses worked more than forty (40) hours per week.

*Id.* at 4. Plaintiffs also assert a Rule 23 class action alleging breach of contract, quantum meruit, and unjust enrichment for the lunch break deduction of "straight time," or when nurses worked forty hours or fewer per week. *Id.* at 16. That class consists of:

> Nurses employed at all Regency Village locations to provide direct patient care at any time during the four years before this Complaint was filed up to the present who, as a result of Defendants' practice of automatically deducting 30 minutes or 1 hour from each shift worked and not paying for same, did not receive all of the straight time pay at their contractual hourly rate to which they were entitled in the weeks of their employment in which said nurses worked forty (40) or fewer hours per week.

2

*Id.* at 4.

In the instant motions, Regency moves to dismiss Plaintiffs' complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. 43. Plaintiffs argue that the case should not be dismissed, or in the alternative, that they should be given leave to amend their complaint to cure any deficiencies. Dkt. 44. Also, Plaintiffs move for conditional certification of their FLSA class. Dkt. 24. Regency opposes conditional certification. Dkts. 27, 28, 29, 30.

## II. MOTION TO DISMISS

### A. Legal Standard

Rule 8(a)(2) requires that the pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A party against whom claims are asserted may move to dismiss those claims when the nonmovant has failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted). While the allegations need not be overly detailed, a plaintiff's pleading must still provide the grounds of his entitlement to relief, which "requires more than labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). Instead, "[a] claim has

3

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Evaluating a motion to dismiss is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "Ultimately, the question for a court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff." *NuVasive, Inc. v. Renaissance Surgical Ctr.*, 853 F. Supp. 2d 654, 658 (S.D. Tex. 2012).

**B.     Analysis**

   *1.     Plaintiffs' FLSA Claim*

Regency argues that Plaintiffs fail to state sufficient facts to support their FLSA claim for failure to pay overtime. Dkt. 43 at 14. Under the FLSA, employers must pay overtime compensation to non-exempt employees for each hour worked beyond forty hours per week. 29 U.S.C. § 207(a)(1) ("[N]o employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of [forty hours] at a rate not less than one and one-half times the regular rate at which he is employed"). "To show a violation of the FLSA's overtime requirements, a plaintiff must allege (1) that he was employed by the defendant; (2) that his work involved interstate activity; and (3) that he performed work for which he was undercompensated." *Coleman v. John Moore Servs., Inc.*, No. H-13-2090, 2014 WL 51290, at *2 (S.D. Tex. Jan. 7, 2014) (Rosenthal, J.).

In *Coleman*, an electrician sued his former employer for failing to pay overtime. *Id.* at *1. *Coleman* analyzed First and Second Circuit authority to grant the employer's motion to dismiss without prejudice and with leave to amend after finding the electrician's allegations inadequate. *Id.* (analyzing *DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 89 (2d Cir. 2013) and *Pruell v. Caritas Christi*, 678 F.3d 10, 13 (1st Cir. 2012). There, the court noted that "[t]he complaint merely

allege[d] that '[during] one or more weeks of Plaintiff's employment, Plaintiff worked in excess of forty (40) hours' and that during 'one or more weeks . . . Defendant failed to pay Plaintiff' the overtime rate." *Id.* at *4. *Coleman* distinguished its outcome from *Hoffman* because the latter provided "some additional factual context for their claim" *Id.* (citing *Hoffman v. Cemex, Inc.*, No. H-09-3144, 2009 WL 4825224, at *9 (S.D. Tex. Dec. 8, 2009) (Rosenthal, J.)).

In *Hoffman*, the district court denied an employer's 12(b)(6) motion to dismiss FLSA claims made by two technicians to recover unpaid overtime. *Hoffman*, 2009 WL 485224, at *3. There, the technicians alleged that they "were classified as nonexempt, that they regularly worked more than 40 hours per workweek, and that they were not paid time-and-a half for those overtime hours." *Id.* *Hoffman* held that "those are all factual allegation[s]—not legal conclusions—and, if proven, they give rise to a plausible claim for relief." *Id.*

Relying on *Hoffman*, this court previously held that allegations were sufficient when the plaintiff alleged that "he was a nonexempt employee, that he regularly worked more than forty hours per work week, and that he was not paid at the overtime rate for those hours." *Saucedo v. MSF Electric, Inc.*, No. H-17-1943, 2017 WL 5997770, at *3 (S.D. Tex. Dec. 4, 2017) (Miller, J.). In the instant case, Plaintiffs allege that they: (1) were employed by Regency; (2) were subject to an automatic meal deduction; (3) regularly performed compensable work during the meal breaks; (4) regularly worked more than forty hours per week; and (5) were not paid overtime for their work during meal breaks in the weeks they worked over forty hours. Dkt. 42 at 6, 10–13. Just like in *Saucedo* and *Hoffman*, Plaintiffs' alleged facts, if proven, give rise to a plausible claim for relief. Thus, Regency's motion to dismiss Plaintiffs' FLSA claims is DENIED.

2. *Rule 23 Claims*

Regency lodges the following arguments to dismiss Plaintiffs' Rule 23 class allegations and

the underlying state law causes of actions: (1) supplemental jurisdiction over the state law claims is unwarranted; (2) the FLSA preempts Plaintiffs' state law causes of actions; (3) Rule 23 claims are incompatible with FLSA claims and must be dismissed; (4) Plaintiffs' state law claims cannot be maintained as a class action; and (5) Plaintiffs' claims for unjust enrichment and quantum meruit fail because Plaintiffs allege a contract governs the parties' relationship. Dkt. 43. Because the court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c), Regency's alternative arguments are rendered moot.

Regency argues that the court should decline to exercise supplemental jurisdiction over Plaintiffs' Rule 23 claims under 28 U.S.C. § 1367(c). *Id.* at 25–28. Specifically, Regency argues that the state law claims will predominate over the alleged FLSA violations. *Id.* Assuming that supplemental jurisdiction would be proper under § 1367(a), the court "may decline to exercise supplemental jurisdiction" if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

In determining whether to relinquish jurisdiction over pendent state law claims, the court looks "to the statutory factors set forth by 28 U.S.C. § 1367(c), and to the common law factors of judicial economy, convenience, fairness, and comity." *Enochs v. Lampasas Cty.*, 641 F.3d 155, 158–59 (5th Cir. 2011). Regarding the § 1367(c) factors, the court finds the second and fourth provide adequate reason for declining supplemental jurisdiction.

Plaintiffs' Rule 23 claims substantially predominate over their FLSA claim because the state law claims require Plaintiffs to go beyond the elements for their FLSA claim. *See Higgins v. White Servs. Grp.*, No: 6:14-cv-472-Orl-18KRS, 2014 U.S. Dist. LEXIS 61859, at *8 (M.D. Fla. Apr. 17, 2014). "To show a violation of the FLSA's overtime requirements, a plaintiff must allege (1) that he was employed by the defendant; (2) that his work involved interstate activity; and (3) that he performed work for which he was undercompensated." *Coleman*, 2014 WL 51290 at *2.

Conversely, to prevail on their breach of contract claim, Plaintiffs must establish that: "(1) a valid contract existed between the plaintiff and the defendant; (2) the plaintiff tendered performance or was excused from doing so; (3) the defendant breached the terms of the contract; and (4) the plaintiff sustained damages as a result of the defendant's breach." *West v. Triple B Servs., LLP*, 264 S.W.3d 440, 446 (Tex. App.—Houston [14th Dist.] 2008, no pet.). In order to recover under quantum meruit, Plaintiffs must show: "(1) valuable service was rendered or materials furnished, (2) to the party sought to be charged, (3) which were accepted by the party sought to be charged, (4) under such circumstances as reasonably notified the recipient that the plaintiff, in performing, expected to be paid by the recipient." *Richter v. Wagner Oil Co.*, 90 S.W.3d 890, 894 (Tex. App.—San Antonio 2002, no pet.). "Unjust enrichment occurs when the person sought to be charged has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain." *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.,* 300 S.W.3d 348, 367 (Tex. App.—Dallas 2009, pet. denied). "A person is unjustly enriched when he obtains a benefit from another by fraud, duress, or the taking of an undue advantage." *Id.*

Plaintiffs argue that their Rule 23 claims "essentially replicate" their FLSA claim and that the court should not decline supplemental jurisdiction just because the Rule 23 claims may have more parties. Dkt. 44 at 28. The state claims will predominate if they "constitute[] the real body of

a case, to which the federal claim is only an appendage." *United Mine Workers v. Gibbs*, 383 U.S. 715, 727, 86 S. Ct. 1130 (1966). The state claims may predominate "in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought." *Id.* at 726. Just based on the elements alone, it is clear that the Rule 23 claims do not replicate the FLSA claim. The Rule 23 claims will require proof beyond that required for the FLSA claim. Further, as Regency notes, the court will have to consider the validity of the alleged contracts. While the state law claims may not be complex, they do require substantially more proof and the discussion of substantially more issues than the FLSA claim. Thus, the Rule 23 claims constitute the real body of the case and predominate the federal claim. *See De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309–10 (3d Cir. 2003).

Further, "the simultaneous management of the two 'irreconcilable' procedures for class formation is unwieldy, would detract from the efficient resolution of the substantive dispute, and, most importantly, is frowned upon by the Fifth Circuit." *Jackson v. City of San Antonio*, 220 F.R.D. 55, 60 (W.D. Tex. 2003) (quoting *LaChapelle v. Owens-Ill., Inc.*, 513 F.2d 286, 288–89 (5th Cir. 1975)). While *LaChapelle* did not hold that Rule 23 classes cannot coexist with FLSA classes, the court stated that the difference between the classes is "irreconcilable." 513 F.2d at 288. Managing two irreconcilable classes, for the sole purpose of hearing state law claims that the court would not otherwise have jurisdiction over, provides the court with sufficient basis to decline jurisdiction under § 1367(c)(4). *See Jackson*, 220 F.R.D. at 59.

The common law factors also support declining supplemental jurisdiction. Because this case is still at the motion to dismiss stage, few judicial resources have been expended. And given the irreconcilable difference between Rule 23 classes and FLSA classes, judicial resources can be preserved by trying the claims separately. *See Higgins*, 2014 U.S. Dist. LEXIS at *9. Further, it is both convenient and fair to try a case between Texas citizens alleging only state causes of action in

a Texas state court. Plaintiffs are not precluded from litigating those claims in state court. Finally, "comity demands that the 'important interests of federalism and comity' be respected by the federal courts, which are courts of limited jurisdiction and 'not as well equipped for determinations of state law as are state courts.'" *Enochs*, 641 F.3d at 160 (quoting *Parker &Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 588–89 (5th Cir. 1992)). Here, not only would the court be making determinations of state law, but those determinations would predominate any federal issues of law. The court finds a statutory and common law basis for declining supplemental jurisdiction. Thus, Plaintiffs' Rule 23 claims are DISMISSED WITHOUT PREJUDICE.

### 3. *Leave to Amend*

Plaintiffs seek leave to amend their complaint should the court find any portion of Plaintiffs' pleadings insufficient. Dkt. 44 at 32. The court does not find a deficiency in Plaintiffs' pleadings. Thus, Plaintiffs' request for leave to amend is DENIED AS MOOT.

### III. MOTION FOR CONDITIONAL CERTIFICATION

#### A. Legal Standard

As previously noted, § 207(a) of the FLSA requires covered employers to compensate nonexempt employees at overtime rates for time worked in excess of forty hours per week. 29 U.S.C. § 207(a). Section 216(b) creates a cause of action against employers who violate the overtime compensation requirements. *Id.* § 216(b). Section 216(b) also permits an employee to bring a collective action lawsuit against an employer on "behalf of himself . . . and other employees similarly situated." *Id.* Employees wishing to join a § 216(b) collective action must affirmatively "opt-in" to the action by filing a written consent with the court. *Id.* The "opt-in" procedure of § 216(b) illustrates its "fundamental, irreconcilable difference" from a class action under Federal Rule of Civil Procedure 23(c): in a Rule 23 proceeding, persons within the class description are

automatically considered class members and must "opt-out" if they do not wish to participate. *LaChapelle*, 513 F.2d at 288.

The Fifth Circuit has declined to adopt a specific test to determine when a court should certify a collective action or grant notice in a § 216(b) action, but most federal courts (including this court) have adopted the *Lusardi* test. *Badgett v. Tex. Taco Cabana, L.P.*, No. H-05-3624, 2006 WL 2934265, at *1–2 (S.D. Tex. Oct. 12, 2006) (Miller, J.). Under the *Lusardi* test, a district court engages in a two-step analysis to determine whether the potential plaintiffs are "similarly situated." *Id*. at *1.

The two stages of the *Lusardi* test are the "notice stage" and the "decertification stage." *Id.* At the notice stage, the court decides, usually solely based on the pleadings and any submitted affidavits, whether to conditionally certify a collective action and give notice to potential class members. *See Mooney v. Aramco Servs*, 54 F.3d 1207, 1213–14 (5th Cir. 1995). The court applies a "fairly lenient standard" because there is often minimal evidence available. *Id.* at 1214. In fact, courts "appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* at 1214 n.8 (quoting *Sperling v. Hoffmann-La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988)). After conditional certification, the "putative class members are given notice and the opportunity to 'opt-in.'" *Id.* at 1214.

Then, the action proceeds as a representative action. *See id.* At the "decertification stage," after the opt-in period has concluded and discovery is largely complete, defendants typically file a motion to decertify. *Id.* "At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question." *Id.* If the court finds the claimants are no longer made up of similarly situated persons, it decertifies the class and

dismisses the opt-in plaintiffs without prejudice. *Id.* If the class is still similarly situated, the court allows the collective action to proceed. *Id.*

A "decision to certify, even if subject to correction at the decertification stage, is not without consequences" as "[t]oo much leniency at the notice stage can lead to a 'frivolous fishing expedition conducted by the plaintiff at the employer's expense.'" *Lang v. DirecTV, Inc.*, No. 10-1085, 2011 WL 6934607, at *6 (E.D. La. Dec. 30, 2011) (footnotes omitted). Further, "extreme leniency at the notice stage can result in conditional certification that must later be revoked on the eve of trial . . . when it becomes obvious that manageability concerns make collective action impossible." *Id.* (footnote omitted). Therefore, while the notice stage standard is lenient, it is not automatic. *Badgett*, 2006 WL 2934265, at *2.

The plaintiff bears the burden of making a preliminary factual showing that a similarly situated group of potential plaintiffs exists. *Id.* To establish this, the plaintiff must make a minimal showing that: "(1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit." *Maynor v. Dow Chem. Co.*, No. G-07-0504, 2008 WL 2220394, at *6 (S.D. Tex. May 28, 2008) (Rosenthal, J.) (citing *Prater v. Commerce Equities Mgmt. Co.*, No. H-07-2349, 2007 WL 4146714, at *4 (S.D. Tex. Nov. 19, 2007); *Simmons v. T-Mobile USA, Inc.*, No. H-06-1820, 2007 WL 210008, at *5 (S.D. Tex. Jan. 24, 2007)).

**B.     Analysis**

*1.     Objections to Plaintiffs' Declarations*

In its 87-page brief, Regency objects to statements contained in the declarations Plaintiffs

attached to their motion for conditional certification. Dkt. 30. The court OVERRULES all of Regency's objections.

Notwithstanding Regency's failure to comply with court procedures,[2] "[a]t this early stage, in a motion for conditional certification, it is not appropriate to require the plaintiffs to produce evidence sufficient to survive summary judgment or to test the merits beyond showing that potential class members are similarly situated." *Corcione v. Methodist Hosp.*, No. G-14-160, 2014 WL 6388039, at *8 (S.D. Tex. Nov. 14, 2014) (Rosenthal, J.). Further, to the extent Regency objects to the declarations for lack of personal knowledge, those objections are without merit. Each declaration specifically provides that the declared facts are within the declarant's personal knowledge. Dkt. 24-1 at 5, 9, 13, 17. An employee may testify as to what is "generally expected of the members of his groups and as to his observations that the employees of these groups tended to work overtime." *Villarreal v. St. Luke's Episcopal Hosp.*, 751 F. Supp. 2d 902, 913 (S.D. Tex. 2010) (Johnson, J.). Each declaration is based on "observations and interactions with other nurses." Dkt. 24-1 at 7, 11, 15, 19. Thus, the declarants had sufficient personal knowledge to make their declarations. The court finds the declarations sufficient for the purposes of meeting the "minimal showing" required for conditional certification. *See Maynor*, 2008 WL 2220394, at *6.

    2.    *Conditional Certification*

        a.    Whether Aggrieved Individuals Exist

Plaintiffs have met their burden to support a reasonable belief that other aggrieved individuals exist. In addition to the four named plaintiffs in this case, twenty-three other individuals have already opted into the suit. Dkt. 2. The court finds that alone is sufficient for Plaintiffs to meet

---

[2]Under the court's procedures, "[w]ithout leave of court, any memorandum shall be limited to 25 pages." Judge Miller's Procedures ¶ 7(A).

their burden. *See Ashcraft v. Core Labs., LP*, No. H-16-823, 2016 WL 3258369, at *3 (S.D. Tex. June 14, 2016) (Miller, J.) (allegations of 24 aggrieved individuals satisfied the first element). Even so, all four named Plaintiffs provided sworn statements that other nurses in their respective units also worked during their lunch breaks, but still had the time automatically deducted from their pay. Dkt. 24-1 at 5–19. Plaintiffs' burden is low, and the court finds Plaintiffs have provided more than sufficient proof that other aggrieved individuals exist. *See Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856, 862 (S.D. Tex. 2012).

b. Whether the Aggrieved Individuals are Similarly Situated to Plaintiffs

Plaintiffs must show that the aggrieved individuals "were affected by a common policy, plan, pattern, or practice to proceed collectively under section 216(b) of the FLSA." *Maynor*, 2008 WL 2220394, at *7. However, "[s]imilarly situated does not necessarily mean identically situated." *Jaso v. Bulldog Connection Specialists LLC*, No. 2:15-CV-269, 2015 WL 11144603, at *4 (S.D. Tex. Oct. 15, 2015) (Tagle, J.) (quoting *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005)). Still, the proposed class members must have similar job requirements and similar terms of payment provisions. *Heeg*, 907 F. Supp. 2d at 862. At this stage, Plaintiffs "need only demonstrate a reasonable basis for the allegation that a class of similarly situated persons exists." *Maynor*, 2008 WL 2220394, at *7.

According to Plaintiffs, the aggrieved individuals are similarly situated with respect to relevant job duties because they all provided direct patient care. Dkt. 24 at 16. Thus, their meal periods were subject to interruption for the same reasons—to provide care to patients requiring immediate assistance and to assist doctors and other personnel. *Id.* Further, Plaintiffs assert that the aggrieved individuals have similar pay structures because they were all subject to the automatic meal break deduction policy. *Id.* Because they were subject to that policy despite remaining on duty

13

during their breaks, Plaintiffs assert they were affected by a common policy in violation of the FLSA. *Id.* at 12.

In support of their argument, Plaintiffs primarily rely on another case in this district. Dkt. 24 (citing *Corcione*, 2014 WL 6388039)). In *Corcione*, the plaintiff claimed that nurses were required to stay on duty during their meal breaks. 2014 WL 6388039, at *2. The parties presented varying evidence regarding how nurses handled meal breaks. *Id.* Some nurses testified that they carried phones or pagers during their breaks while others testified that they did not. *Id.* The evidence suggested that most nurses could leave the hospital during their breaks. *Id.* Further, the hospital had a policy in place that nurses could reverse their automatic deduction if they performed compensable work during their meal break. *Id.* at *4. Judge Rosenthal granted conditional certification, finding that the evidence established "that the automatic-deduction policy applied to [all nurses], and [most nurses] stated that they were sometimes interrupted during their meal breaks." *Id.* Further, Judge Rosenthal declined to engage in the arguments on the merits made by the defendant. *Id.* at *6. Instead, the court ruled that "[t]he case law supports conditionally certifying a class of employees subject to an automatic meal-break deduction who were required to be available for work-related interruptions during those breaks." *Id.*

For the purposes of conditional certification, *Corcione* is materially indistinguishable from the instant case. Plaintiffs have presented evidence that all nurses providing direct patient care were subject to automatic deduction. *See, e.g.*, Dkt. 24-1 at 21. Plaintiffs have also presented evidence that the nurses were subject to interruption during those breaks. *See, e.g.*, *id.* at 6. While Regency may contest the truth of those allegations, the court will not yet engage in merit-based arguments. *See Corcione*, 2014 WL 6388039, at *6. Just as in *Corcione*, "[t]here is a sufficient basis in the

record to find a common policy, satisfying the lenient burden imposed at this stage of the certification analysis."³ *Id.* at *4.

        c.        Whether the Aggrieved Individuals Want to Opt In to the Lawsuit

Plaintiffs have met their burden to show that other aggrieved individuals want to join the class. In *Corcione*, the plaintiff met her burden by providing two declarations from putative class members, "who expressed their belief that other nurses would be interested in joining this suit." *Id.* at *8. Additionally, three opt-in plaintiffs consented to join that suit. *Id.* Here, Plaintiffs provide four declarations expressing that other nurses would be interested in joining the suit, and twenty-three individuals have already opted in.⁴ Dkt. 24-1 at 5–20; Dkt. 2.

Because Plaintiffs satisfy all three elements to make a preliminary showing that a group of similarly situated individuals exist, Plaintiffs' motion for conditional certification is GRANTED.

    3.    *Objections to Proposed Order*

Regency makes the following objections to Plaintiffs' proposed order certifying class: (1) Plaintiffs' use of the term "nurses"; (2) Plaintiffs' request for identifying information; (3) Plaintiffs' request for a 30-day reminder; (4) Plaintiffs' request to call potential plaintiffs; and (5) Plaintiffs' restriction on Regency's ability to communicate with putative class members. Dkt. 28.

---

      ³According to Plaintiffs, "nurses should be paid for the meal periods where they were not paid but should have been because they remained on duty and subject to interruption." Dkt. 32 at 6. Thus, to the extent that Regency argues that whether the meal breaks were actually interrupted is an individualized inquiry, it misses the mark. *See* Dkt. 27 at 24. Plaintiffs assert that regardless of whether a meal break was actually interrupted, the on-duty nurse was still entitled to compensation because of Regency's policy requiring nurses to stay on duty during their break. Dkt. 32 at 6. Plaintiffs have a low bar to show that policy at this stage, and they have met that bar. *Heeg*, 907 F. Supp. 2d at 862.

      ⁴Regency, in its 87-page brief filled with objections to Plaintiffs' declarations, objects to the statements in the declarations that Plaintiffs believe other individuals would want to join the suit. Dkt. 30. While the objection is overruled, the court notes that the twenty-three opt-in plaintiffs alone satisfy the third element. *Ashcraft*, 2016 WL 3258369, at *4.

Regency objects that Plaintiffs' use of the term nurses is improper and overbroad. *Id.* at 2. Plaintiffs propose to use the term "direct care nurse" rather than "nurse." Dkt. 33 at 4. The court is perplexed by the confusion. In their complaint, Plaintiffs define "nurse" and "direct patient care nurse" to include "hourly paid licensed vocational nurses," "hourly paid registered nurses," "hourly paid certified medical assistants," and "hourly paid certified nurse assistants." Dkt. 42 at 1. However, the court does note that Plaintiffs' proposed class is more broad than necessary. Specifically, the proposed class is not limited to Regency's Webster, Texas location at 409 West Greene Street, Webster, Texas 77598. *See* Dkt. 24 at 8 ("Here, the class members all work [at the Webster, Texas location]."). Thus, the court AMENDS the proposed FLSA class definition as follows:

> Hourly paid nurses, including licensed vocational nurses, registered nurses, certified medical assistants, and certified nurse assistants, employed at Regency Village's Webster, Texas location to provide direct patient care at any time from March 15, 2015 to the present, who were subject to an automatic deduction of their meal breaks and were either interrupted or were subject to interruptions during those breaks and who did not receive all of the overtime pay to which they were entitled in the weeks that said nurses worked more than forty hours.

Likewise, the court AMENDS the scope of the proposed notice to include:

> All hourly paid nurses, including licensed vocational nurses, registered nurses, certified medical assistants, and certified nurse assistants, employed at Regency Village's Webster, Texas location to provide direct patient care at any time from March 15, 2015 to the present.

Regency also objects to Plaintiffs' demand for "all known addresses, all phone numbers (home, mobile, etc.), dates of birth, all known email addresses (work and personal), [and] driver's license numbers." Dkt. 28 at 2. The court SUSTAINS this objection. As the court has previously held, there is no reason to produce more than "the name, last known mailing address, and dates of employment for each putative collection member" at the notice stage. *Ashcraft*, 2016 WL 3258369,

at *4.  Further, because Regency need not provide the telephone numbers of putative class members, Regency's objection to Plaintiffs calling putative class member is SUSTAINED.

Regency objects to Plaintiffs' request for a 30-day reminder.  Dkt. 28 at 7.  The court has allowed a reminder notice in the past and will do so again.  *Monteagudo Argueta v. All Am. Clothing, Inc.*, No. H-17-1932, 2018 WL 560326, at *2 (S.D. Tex. Jan. 25, 2018) (Miller, J.).  Thus, Regency's objection is OVERRULED.

Finally, Regency objects to Plaintiffs' restriction that "Defendants are hereby prohibited from communicating, directly or indirectly, with any current or former hourly employees about any matters which touch or concern the settlement of any outstanding wage claims, or other matters related to this suit, during the opt-in period." Dkt. 28 at 8.  To prevent the communication, Plaintiffs must show: "(1) that a particular form of communication has occurred or is threatened to occur, and (2) that the particular form of communication at issue is abusive and threatens the proper functioning of the litigation." *Garcia v. TWC Admin., LLC*, No. SA:14-CV-985-DAE, 2015 WL 1737932, at *3 (W.D. Tex. Apr. 16, 2015) (citation omitted).  Because Plaintiffs failed to make this showing, Regency's objection is SUSTAINED.

    4.  *Objections to Notice of Rights and Consent Forms*

Regency again objects to the form of notice and reminder.  Dkt. 29 at 2–3.  The court addressed those concerns above.  Notice must be sent by mail, and the 30-day reminder is proper.  The court SUSTAINS Regency's notice objection and OVERRULES the reminder objection.

Regency also makes the following objections to the content of the proposed notice and consent forms: (1) the forms do not inform putative class members of their right to select their own counsel; (2) the notice fails to inform putative class members of Regency's position in the lawsuit; (3) the consent forms should not be returned to Plaintiffs' counsel; (4) the notice provides an

17

incorrect description of the possible outcomes of this lawsuit; (5) the notice fails to include contact information for Regency's counsel; (6) the scope of the notice should be limited to two years; and (7) the notice improperly implies judicial endorsement. Dkt. 29.

The court SUSTAINS Regency's first two objections. The notice should inform putative class members that they may also contact any attorney of their choosing to discuss the case and must also contain a brief explanation of Regency's bases for disputing liability. *Yaklin v. W-H Energy Servs., Inc.*, No. C-07-422, 2008 WL 1989795, at *4 (S.D. Tex. May 2, 2008).

The court OVERRULES Regency's third objection because it is this court's current practice for consent forms to be returned to plaintiff's counsel. *See, e.g.*, *Monteagudo*, 2018 WL 560326, at *2. Regency's fourth and seventh objections are OVERRULED as factually unsupported. The court OVERRULES Regency's fifth objection because including defense counsel's contact information "risks violation of ethical rules and inadvertent inquiries, thus engendering needless confusion." *Garcia*, 2015 WL 1737932, at *7 (citation omitted). The court OVERRULES Regency's sixth objection because three years is the proper statute of limitations when a plaintiff sues for willful violation of the FLSA. *See id.* at *6 (citing 29 U.S.C. § 255(a)).

Plaintiffs are ORDERED to amend the notice and consent forms in compliance with this order. The court encourages the parties to come to an agreement regarding the changes needed to comply with this order. If the parties do not come to an agreement, Plaintiffs must submit their new proposed forms to the court by March 29, 2018.

### IV. CONCLUSION

Regency's motion to dismiss (Dkt. 43) is GRANTED IN PART and DENIED IN PART. Plaintiffs' Rule 23 claims are DISMISSED WITHOUT PREJUDICE. Plaintiffs' motion for conditional certification (Dkt. 24) is GRANTED. It is ORDERED that, within twenty (20) days

from the entry of this order, Regency shall provide the full names, last known addresses, and dates of employment for the following class of persons:

> All hourly paid nurses, including licensed vocational nurses, registered nurses, certified medical assistants, and certified nurse assistants, employed at Regency Village's Webster, Texas location to provide direct patient care at any time from March 15, 2015 to the present.

It is ORDERED that once the notice and consent forms are amended in compliance with order, Plaintiffs' counsel shall send the notices at its own expense to the potential collective action members via first class mail within twenty (20) days after Regency complies with this order. The notices shall include a consent form and a self-addressed, stamped envelope. Plaintiffs' counsel may send a postcard reminder to those class members who have not yet submitted a consent form via first class mail thirty (30) days after sending the first set of notices. Each potential plaintiff will have sixty (60) days from the postmark date of the first notice to return his or her consent form to Plaintiffs' counsel.

Signed at Houston, Texas on March 15, 2018.

_____
Gray H. Miller
United States District Judge